ALMON, Justice.
The defendant, the City of Prichard, Alabama, appeals from a $489,278 summary judgment in favor of the plaintiff First Alabama Bank, as trustee. As trustee for holders of certain revenue bonds issued by the Prichard Public Building Authority (“Authority”), First Alabama Bank brought this action, alleging that the City of Prichard was liable for unpaid rent due in 1991 and 1992 and other expenses, totalling $489,278, under a lease between the City of Prichard and the Authority, in which rent was pledged by the Authority to First Alabama Bank to make payments of principal and interest on $2,935,-000 in bonded indebtedness. This is a lease or contract construction case, involving a dispute between the City of Prichard and First Alabama Bank over whether the City of Prichard was obligated to make annual rental payments on September 1, 1991, and September 1, 1992, under the terms of the lease between the City of Prichard and the Authority and the terms of the resolution authorizing the bond issue.
To finance the construction of the Prichard Municipal Complex, the Authority adopted two resolutions — one on May 23, 1973, and another on June 5,1973 (hereinafter together called “the resolution”)[1] — which authorized the issuance of $2,925,000 in revenue bonds to build and equip the Prichard Municipal Complex. The resolution provided that Merchants National Bank of Mobile, the predecessor of First Alabama Bank, would be the trustee for the bondholders. Under § 11 of the resolution, the Authority assigned to First Alabama Bank all revenues derived from the Municipal Complex, including all money received as rent under the lease between the City of Prichard and the Authority:
“The Authority hereby pledges and unconditionally assigns to the Trustee, all rents and revenues derived from the project, including all monies received under the lease agreement, to the extent necessary for such purpose, for payment at their respective maturities of the principal of and interest on the bonds....”
Relevant to the issues in this appeal are various trust fund accounts established by the resolution. Section 10 of the resolution provides that the trustee establish “The Public Building Authority of the City of Prichard Revenue Fund” (“revenue fund”). Into the revenue fund, the trustee is to deposit all “receipts and income from the leasing of the project and all other revenues” derived from the Prichard Municipal Complex. The trustee is further directed that this income and other revenue “paid into the revenue fund” “shall be set aside and used solely for the’ following purposes in the following order.” The resolution sets up four subaccounts: the “current principal and interest account” (“current account”), the “sinking fund account,” the “operation and maintenance account,” and the “reserve account.” Most relevant here are the “current account,” the “sinking fund account,” and the “reserve account.”
Under § 10(a) of the resolution, after construction of the Municipal Complex the trust *554 ee is to allocate to the current account from the revenue fund an amount of money that, when added to the amount already on deposit, will provide an amount sufficient to pay the principal and interest due on the bonds in the succeeding fiscal year.
Under § 10(b) of the resolution, money from the revenue fund is to be allocated to the sinking fund each fiscal year for the purpose of redeeming the bonds maturing on October 1, 2008. Section 10(b) sets forth the specific amount to be allocated to the sinking fund on October 1 of each fiscal year, e.g., $90,000 in 1991 and $100,000 in 1992.
Section 10(c) sets up the operation and maintenance account, which pays insurance premiums, janitorial service, and the trustee’s compensation.
Section 10(d) of the resolution provides that for purposes of its initial funding, excess money from other subaccounts and money from the revenue fund and other sources is to be paid into the reserve fund to the extent required to maintain a balance of $225,000. Thereafter, if the amount on deposit in the reserve fund falls below $225,000, money from the revenue fund is to be deposited in the reserve account in an amount equal to ⅛ of the deficit for a period of three years until the deficit is eliminated. Section 10(d) also specifies the authorized uses of funds from the reserve account. Section 10(d) provides, in pertinent part:
“There is hereby created within the revenue fund a special account the full name of which shall be the ‘reserve account’. There shall be paid into the reserve account all income from the investment and re-investment of the moneys in the construction fund, and the amount, if any, remaining in the capitalized interest subac-count, as provided in subsection (a) of this Section 10. In addition thereto and to the extent required to make the amount on deposit therein equal to $225,000, there shall also be paid into the reserve account all moneys derived from the sale of the Bonds which may remain unexpended in the construction fund created in Section 9 hereof after completion of construction and equipment of the project and payment of all costs in connection therewith. Thereafter, if the amount on deposit in the reserve account is less than $225,000, the Trustee shall, from the moneys in the revenue fund, deposit in the reserve account one-third (⅜) of such deficit in each of the next three succeeding fiscal years. No further deposits into the reserve account need be made from the revenue fund when there has been deposited therein and so long as there shall remain therein an amount equal to $225,000. The moneys in the reserve account shall be used only to pay at or after their respective maturities and due dates any principal or interest maturing or becoming due with respect to the Bonds during any fiscal year in which the current revenues from the project shall be insufficient to pay such principal and interest and shall be so used only when necessary to prevent or to make good a default in the payment of such principal and interest. Whenever moneys on deposit in the reserve account shall be in excess of the sum of $225,000, moneys in the reserve account to the extent of such excess may, at the option of the Authority, be used for the purchase or redemption of Bonds. The Trustee shall invest any moneys on deposit in the reserve account which the Authority shall determine will not be needed during the then ensuing six calendar months to prevent a default in the payment of the principal of and the interest on the Bonds- In the event of any such investment, the securities in which such investment shall be made, together with all income therefrom, shall become a part of the reserve account. The Trustee shall cause such securities to be sold or otherwise converted into cash whenever it may be necessary to provide cash for a purpose for which moneys in the reserve account are herein permitted to be used.”
The lease between the City of Prichard and the Authority provides for annual terms. Each annual term begins October 1, and full payment of rent for the year is due on September 1. The lease is to expire when all the principal and interest due under the revenue bonds is paid. With regard to the amount of rent due annually, § 4 of the lease provides:
*555 “The amount of such annual [rental] payment shall be the sum of the amounts required under said resolution to be deposited in the current account, sinking fund account, operation and maintenance account and reserve account for any subsequent fiscal year of the lessee in which this lease is in effect.”
During the 1970’s and 1980’s, the City of Prichard had difficulty meeting its judgment obligations. Under a judgment entered in Samuel Lasner, et al. v. City of Prichard, Alabama, CV-77-001488 (Mobile Cir.Ct.1980), the Mobile Circuit Court established a system whereby the City of Prichard would contribute monthly $24,800 from sales tax revenue to a common fund, from which the judgment creditors of the city would be paid in the order of the priority of their judgments. Although the record before us does not contain a copy of the Lasner judgment, it seems that under the system established by Lasner a judgment creditor receives no payment until its judgment has priority, i.e., until it becomes the oldest judgment in line for payment.
In 1987, 1988, and 1989, the City of Prich-ard was unable to meet its rent obligation under the lease. First Alabama Bank brought an action, and the City of Prichard consented to a judgment in favor of First Alabama Bank for the rent due in these years. While First Alabama Bank waited until its consent judgment attained priority for payment under the Lasner procedure, First Alabama Bank apparently used funds from the reserve account to make the payments of principal and interest to the bondholders in 1987, 1988, and 1989. During these years, the balance in the reserve account apparently fell below $225,000.
First Alabama Bank eventually received money under the Lasner procedure to satisfy the consent judgment. As this money was received, First Alabama Bank deposited it in the reserve account, and a surplus developed, i.e., an amount exceeding $225,000. According to the affidavit of James A. Clausell, a C.P.A. specializing in municipal auditing and financial accounting, First Alabama Bank had $638,657 on deposit in the reserve account on September 30, 1992, and was expected soon thereafter to receive another $110,479. Most, or nearly all, of this money seems to have originated from payments received by First Alabama Bank under the Lasner procedure, deposited into the revenue fund and subsequently allocated to the reserve account.
On July 24, 1991, First Alabama Bank notified the City of Prichard that it owed $262,605 in rent due September 1,1991. The City of Prichard made a partial payment of $75,000, leaving an unpaid balance of $187,-605. On August 20, 1992, First Alabama Bank notified the City of Prichard that it owed $279,855 in rent due September 1,1992. This time the City of Prichard made no payment.
As trustee, First Alabama Bank filed this complaint on August 31, 1992, alleging that the City of Prichard owed it $187,605 in unpaid rent due on September 1,1991. First Alabama Bank later amended its complaint to add a claim for $279,855 in unpaid rent due on September 1, 1992, and other expenses of $21,818 (e.g., insurance premium). The circuit court entered a $489,278 summary judgment in favor of First Alabama Bank, and the City of Prichard appealed.
As framed by the City of Prichard, the issue is whether under the resolution and lease the City of Prichard was obligated to pay rent in 1991 and 1992, if funds exceeding $225,000 in the reserve account were sufficient to pay the principal and interest due in these years.
The City of Prichard contends that the existence of the excess funds in the reserve account relieved it of its obligation to pay any rent in 1991 and 1992, because under § 11 of the resolution the amount of rent it was obligated to pay under the lease during these fiscal years was limited to the amount necessary in these fiscal years to pay principal and interest due on the bonds. Because, it says, no additional monies were necessary to make these payments of principal and interest, because excess funds in the reserve account were sufficient, the City of Prichard argues that it was not liable for any amount of rent in 1991 and 1992.
*556 The City of Prichard bases its argument on the terms of the resolution and the lease, which, it says, define the amount of rent it is obligated to pay annually. The City of Prichard contends that the lease does not itself specify the amount of rent due annually. According to the City of Prichard, § 4 of the lease provides only that it is the resolution that establishes the formula for determining what amount of rent is due annually; Section 4 provides:
“The amount of such annual payment shall be the sum of the amounts required under said resolution to be deposited in the current account, sinking fund account, operation and maintenance account and reserve account for any subsequent fiscal year of the lessee in which this lease is in effect.”
(Emphasis implied by the argument of the City of Prichard.) The City of Prichard argues that § 11 of the resolution, not § 4 of the lease, provides the formula for determining the amount that the Authority is obligated to “pledge” to First Alabama Bank and, therefore, the amount of rent the City of Prichard is obligated to pay First Alabama Bank each fiscal year. The City of Prichard, therefore, contends that under § 11 of the resolution, it is obligated to pay in rent only an amount necessary to make the payments of principal and interest due on the bonds in any fiscal year. On the basis of this construction of the resolution and the lease, the City of Prichard contends that because the funds in the reserve account were sufficient in 1991 and 1992 to pay the principal and interest due on the bonds, it was not obligated to pay any amount of rent during these years.
In reply to First Alabama Bank’s argument that the funds in the reserve account are not required to be paid to the bondholders in the absence of a default, the City of Prichard contends that First Alabama Bank misused the reserve account by allocating to it the funds recovered under the Lasner procedure for the purpose of creating a “slush fund” to secure itself further against default. The City of Prichard argues that so long as the reserve account is maintained at $225,000, as provided under § 10(d) of the resolution, First Alabama Bank is prohibited from allocating any more money to it. Any amount of funds in excess of $225,000, the City of Prichard says, should be paid to the bondholders, relieving it thereby of any obligation to pay additional rent until these excess funds are exhausted.
First Alabama Bank responds, arguing that the funds in the reserve account, collected under the consent judgment by means of the Lasner procedure, did not affect the City of Prichard’s obligation to pay rent in 1991 and 1992.
First Alabama Bank disputes the City of Prichard’s contention that § 11 of the resolution fixes the amount of rent due annually as only that amount necessary to pay the amount of principal and interest due in any fiscal year. First Alabama Bank argues that the City of Prichard’s reliance on § 11 of the resolution is misplaced and that § 4 of the lease and § 10 of the resolution determine the amount of rent due annually. According to First Alabama Bank, § 4 of the lease provides that the City of Prichard must pay annually an amount in rent required by the resolution to be allocated to the various sub-accounts within the revenue fund; Section 4 provides:
“The amount of such annual payment shall be the sum of the accounts required under said resolution to be deposited in the current account, sinking fund account, operation and maintenance account and reserve account for any subsequent fiscal year of the lessee in which this lease is in effect.”
(Emphasis implied by First Alabama Bank.) Therefore, First Alabama Bank argues, the amount due annually in rent is the amount required by the resolution to meet the funding requirements of the various subaccounts of the revenue fund established under § 10 of the resolution.
First Alabama Bank also disputes the City of Prichard’s argument that the funds in the reserve account, obtained under the Lasner procedure, are required to be used to make payments of principal and interest and that the existence of funds in this account somehow relieves the City of Prichard of its obligation to pay rent. First Alabama Bank *557 contends that the resolution and the lease, unambiguously impose on the City of Prich-ard an obligation to make annual payments of rent until the principal amount of the bond indebtedness and all interest due thereon are paid. No provision of either the resolution or the lease, First Alabama Bank says, specifically relieves the City of Prichard of its obligation to pay rent annually when funds, already in the reserve account, are sufficient to make the payments of principal and interest in any fiscal years. First Alabama Bank argues that the reserve account is in the nature of a security deposit, from which First Alabama Bank, as trustee, can take funds to make the annual payments of principal and interest to the bondholders if the City of Prichard defaults on its obligation to pay rent. Thus, it insists, it is not required to use those funds to pay principal and interest in the absence of a default.
We reject the contention of the City of Prichard that § 11 of the resolution somehow defines or, in the circumstances of this case, limits the amount of rent due in any fiscal year to the amount of rent and revenue that the Authority is obligated to pledge and assign to the trustee. Section 4 of the lease clearly states that the City of Prichard is to pay in rent an amount necessary to meet the funding requirements of the various subac-counts of the revenue fund. According to the plain language of the lease and the resolution, § 4 of the lease and § 10 of the resolution govern, not § 11 of the resolution. Therefore, the funding requirements of the current account, the sinking fund account, the operation and maintenance account, and the reserve account establish or determine the amount of rent due in any fiscal year.
We also reject the contention of the City of Prichard that the existence alone of excess funds in the reserve account conditions, qualifies, or limits its obligation to pay annually an amount of rent sufficient to fund the current account and the other subaccounts. As can be seen from § 10(d), funds in excess of $225,000 could properly accrue to the reserve account, such as by income on investment of the reserve funds. If such excess funds have properly accrued to the reserve account, the resolution neither requires nor authorizes the trustee to allocate such excess reserve funds to satisfy the funding obligations of any other subaccount. Nevertheless, we believe that a question of fact exists as to whether, or to what extent, the City of Prichard was in default in September 1991 and September 1992.
Section 10 requires that all “receipts and income from the leasing of the project and all other revenues” be paid into the revenue fund. The money received under the Lasner procedure was undoubtedly “receipts and income from the leasing of the project” or “other revenue.” How that “income” or “other revenue,” which was presumably paid into the revenue fund, should have been allocated among the various subaccounts of the revenue fund depended on their respective funding requirements, as provided in § 10 of the resolution.
From the record, the briefs, and the oral arguments of counsel, it appears that First Alabama Bank allocated all the money received under the Lasner procedure to the reserve account, not the current account or any other subaccount. The question, therefore, is whether First Alabama Bank improperly diverted the Lasner payments by allocating them to the reserve account, instead of using them in 1991 and 1992 (or earlier) to fund the current account and other subac-counts. How First Alabama Bank used or distributed this money would have greatly affected the amount necessary in 1991 and 1992 to fund the subaccounts, especially the current account, and, consequently, the amount of rent the City of Prichard was obligated to pay to meet the funding requirements of the subaccounts during those years.
Other than certain obligations during the initial funding of the reserve account, § 10(d) provides that in any fiscal year the reserve account need be funded only if the balance of the account falls below $225,000, and then it need be funded only in an amount equal to one-third of the deficit. Thus, if the reserve account remains at $225,000, the trustee is not required to allocate money to it. As a matter of lease or contract construction, the key question, therefore, is whether the trustee had the authority under the resolution to allocate money to the reserve account, when *558 its balance was already $225,000, if the funding requirements of the current account and the other subaccounts had not yet been satisfied for the fiscal year.
Although it is not stated specifically in the resolution, the clear intention of the resolution is that if the balance in the reserve account remains at a minimum of $225,000, revenue from the Municipal Complex in the revenue fund (even though not received in the form of an annual rent payment) must be used to meet the funding requirements of the current account and the other subaccounts before such revenue may be allocated into the reserve account. If the balance falls below $225,000, the funding requirement of the reserve account is triggered, and the funding requirement of the reserve account becomes concurrent and cumulative with those of the current account and the other subaccounts.
Our concern is that during 1991 and 1992 First Alabama Bank allocated money received under the Lasner procedure into the reserve account instead of using it to fund the current account and the other subac-counts, even though the balance of the reserve account had already been restored to $225,000. Evidence in the record would support an inference that First Alabama Bank allocated the money from the Lasner payments to the reserve account and then later, without considering these funds, calculated the amount of rent necessary to meet the funding requirements of the current account and the other subaccounts. If so, then the amount of rent due during the fiscal years 1991 and 1992 should be recalculated to determine if, or to what extent, the City of Prichard was in default during these years.
Therefore, based on the foregoing, we reverse this judgment and remand this cause to the circuit court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, STEAGALL, KENNEDY, INGRAM and COOK, JJ., concur.

. The resolution adopted June 5, 1973, amended some provisions of the resolution adopted on May 23, 1973.